UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARQUES J. HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>NANCY B. MARTHAKIS AND DIANE THEWS,<br><br>Defendants. | CAUSE NO. 3:26-CV-1586-TLS-AZ |

## OPINION AND ORDER

Marques J. Harris, a prisoner without a lawyer, filed a complaint alleging he received constitutionally inadequate medical care from Dr. Nancy B. Marthakis and APN Diane Thews while housed at the Indiana State Prison. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Harris alleges that he suffers from a testicular cyst and degenerative disc disease. He asserts that he cannot take nonsteroidal anti-inflammatory drugs ("NSAIDs") due to a history of adverse side effects that are allegedly documented in his medical records. He further asserts that, despite sharing this information with both Dr. Nancy B. Marthakis and APN Thews, they persist in treating his pain with NSAIDs. He also asserts that his requests to see specialists to address his medical conditions have been denied.

Eighth Amendment Medical Claims

Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, it is not enough that a medical professional be mistaken in his or her judgment—the deliberate indifference standard requires a something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness," *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020) (citation omitted). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Accordingly, deference must be given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (cleaned up). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (cleaned up).

Harris' Treatment for a Testicular Cyst

On April 15, 2021, Harris submitted a request for health care because he had pain in his right testicle. Nurse Jackie Monaco[1] examined Harris and found no lumps or signs of trauma. She told Harris to fill out another health care request if the pain continues or gets worse. On May 7, 2021, Harris was assessed by Nurse Lacey R. Gorske.[2] She likewise did not see anything wrong with Harris' testicle, but she referred him to Dr. Nancy Marthakis.

Harris was seen by Dr. Marthakis on May 15, 2021. She too found no lumps or signs of trauma, but she prescribed doxycycline as a precaution and gave Harris ibuprofen for pain. At that time, Harris explained that he could not tolerate NSAIDs because they had caused bleeding ulcers and other digestive track ailments in the past. These allegedly included persistent diarrhea, loss of bladder and bowel control, and vomiting. Dr. Marthakis said she did not see this in Harris' chart and that he should follow her treatment plan.

Harris alleges that, over the next five years,[3] his treatment for testicular pain has included one NSAID after another: ibuprofen, naproxen, meloxicam, and Toradol. Harris asserts that,

---

[1] Nurse Monaco is not a defendant in this action.
[2] Nurse Gorski is also not a defendant in this action.
[3] While it is clear from the complaint that Harris' pain has persisted, he provides few details regarding the nature or extent of his pain. For purposes of this order, the court presumes that his condition constitutes a serious medical condition.

each time he saw Dr. Marthakis or APN Thews, he told them he could not tolerate NSAIDs, but they always said they did not see that in his chart. This was true even after Harris presented medical records that verified his claim.[4] However, during this five-year period, Harris does not indicate how often he saw either Dr. Marthakis or APN Thews for this condition.

In addition to NSAIDs, at some point during the course of his treatment, Harris was tested for sexually transmitted infections and provided with a jock strap to wear. The jock strap increases his pain, but when he explained this, he was told to continue to wear it and follow the treatment plan.

On January 22, 2026, Harris asked Dr. Marthakis to refer him to see a urologist to get another opinion on his condition. This was not Harris' first request, although he does not indicate when he made the prior request. In response, Dr. Marthakis became "irate and disrespectful." ECF 1 at 4. She pointed to the credentials on her office wall and said things like "I am a doctor, not you, so you don't get to inform me concerning what's good for you! I know my job." *Id.* At one point during this meeting, she told Harris, "It's just a very small cyst, suck it up buttercup!" *Id.* She then left, indicating that "Regional isn't going to approve it anyway, good-bye." *Id.* Harris obtained copies of the notes from this visit and alleges that Dr. Marthakis recorded false information regarding his conduct during this meeting. According to Harris, Dr. Marthakis was the only person yelling and being disrespectful during the meeting. Harris filed a grievance against Dr. Marthakis after this appointment.

Dr. Marthakis submitted a request for a consultation with a urologist, as Harris had requested, but the request was denied. Harris believes the request was denied because she reported false accusations regarding Harris' behavior. In lieu of seeing a urologist, Dr. Marthakis

[4] Harris' complaint does not explain what evidence he produced or indicate when he presented the defendants with this evidence.

developed an alternative treatment plan. That plan, however, was no different than the treatment Harris had already received: he was told to keep taking NSAIDs and wear the jock strap. Harris has sought medical care relating to his testicular cyst since the request to see a specialist was denied, but Dr. Marthakis has allegedly ignored those requests.

As previously noted, the Constitution does not grant Harris the right to demand specific medical care. *Walker*, 940 F.3d 965. He cannot select the medications he receives, decide whether he sees a specialist, or otherwise dictate his own treatment plan. Here it is clear Dr. Marthakis provided Harris with some care for his testicular pain, including antibiotics, testing for sexually transmitted diseases, NSAIDs, and the jock strap. Nonetheless, Harris has ongoing pain, and he asserts that the ongoing aspects of his care – the NSAIDS and the jock strap – are each problematic. The jock strap is problematic because it increases his pain. Harris believes that the use of NSAIDs are problematic because they have allegedly triggered significant negative side effects in the past, but it cannot be plausibly inferred that, by itself, any use of NSAIDs to treat Harris' condition reflects a lack of medical judgment. Prescribing NSAIDs for someone who has had a stomach ulcer, sometimes referred to as a peptic ulcer,[5] requires caution, but, without more, it does not suggest a lack of medical judgment.

> If you have a peptic ulcer caused by taking NSAIDs, your doctor may recommend changing your medicines. Depending on the reason you have been taking NSAIDs, your doctor may suggest stopping NSAIDs, taking a different NSAID, taking a lower-dose NSAID, or taking a different medicine for pain.
>
> If you need to keep taking NSAIDs, your doctor may recommend you also take a [proton pump inhibitor].

https://www.niddk.nih.gov/health-information/digestive-diseases/peptic-ulcers-stomach-ulcers/treatment (last visited Nov. 6, 2026).

[5] "Sometimes, a stomach ulcer is called a peptic ulcer." https://my.clevelandclinic.org/health/diseases/22314-stomach-ulcer (last visited Nov. 6, 2026).

That said, the use of NSAIDs despite a history of bleeding ulcers, the insistence on using a jock strap when it is reported to increase Harris' pain, Dr. Marthakis' rude reaction to being asked about seeing a specialist, and her alleged mischaracterization of Harris' behavior in his medical records, when considered in combination, are sufficient to allow Harris to proceed beyond the screening stage on his claim that Dr. Marthakis was deliberately indifferent to his serious medical needs related to his testicular pain. *See, e.g.*, *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (medical professionals may be liable if they ignore pain or delay necessary treatment); *see also Sanders v. Moss*, 153 F.4th 557, 568 (7th Cir. 2025) (deliberate indifference may be established when "a prison official persists in a course of treatment known to be ineffective" (quoting *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016), *as amended* (Aug. 25, 2016))).

However, Harris' allegations regarding the care he received from APN Thews for his testicular pain are too vague to permit a plausible inference that she was deliberately indifferent to his serious medical needs related to testicular pain. Harris does not provide the dates for any appointments with APN Thews that addressed his testicular pain, and he does not describe any specific encounter with APN Thews. He alleges only generally that she kept giving him NSAIDs over a five-year period despite being told that he has had adverse side effects in the past. Standing alone, this does not demonstrate a lack of medical judgment. At most, it may suggest negligence, but that is insufficient to state a claim.

<u>Harris' Back Pain and Degenerative Disc Disease</u>

Harris submitted a health care request on June 24, 2024, due to extreme pain in his lower back. Harris believes the pain is related to an earlier diagnosis of degenerative disc disease. Since

then, he has been seen several times for back pain.[6] On each occasion, Dr. Marthakis, APN Thews, or another provider prescribed NSAIDs such as ibuprofen, naproxen, meloxicam, and Toradol injections. As already noted, he told Dr. Marthakis and APN Thews that he cannot tolerate these medications because they have caused bleeding ulcers and digestive ailments in the past, including persistent diarrhea, loss of bladder and bowel control, and vomiting. And, also noted above, he asserts that he has provided Dr. Marthakis and APN Thews with medical records that substantiate his claim, but they allegedly persisted in prescribing NSAIDs for this condition.

Harris requested a consultation with an off-site specialist and an MRI. Those requests have not been granted and Harris contends that the defendants have not offered any alternative treatment plan for his degenerative disc disease. However, Dr. Marthakis did order x-rays from Meridian Radiology in Indianapolis. Those results came back on February 25, 2025, and March 3, 2026. The reports indicate that there are "diffuse degenerative changes" in Harris' cervical spine. The thoracic spine showed no remarkable changes. The lumbar spine showed "narrowing at L4, L5-S1 of questionable significance." *Id*. at 6. Harris notes that the findings regarding his cervical spine were new. He interprets "diffuse degrative changes" to mean that his degenerative disc disease has spread to his cervical spine, and he takes issue with Dr. Marthankis' statement in his medical records that he suffers from "Lumbago (lower back pain, NOS)." *Id.* Dr. Marthakis provided Harris with Flexeril, a muscle relaxer, for seven days. She also prescribed meloxicam, an NSAID.

[6] Harris has not provided the dates of each visit or identified which provider he saw on each visit.

Harris asked Nurse Laughlin[7] why Dr. Marthakis only gave him enough Flexeril for seven days. Nurse Laughlin said that their policy was to only allow one order of Flexeril per patient per year.[8]

Harris claims he has constant pain in his neck and back as well as other unspecified ailments associated with spinal disease. Harris additionally claims he is unable to perform simple activities of daily living due to his degenerative disc disease, but he does not explain which activities of daily living he is unable to perform or offer any further information about his condition. He takes issue with the treatment he has received because "other than constantly continuing to prescribe the NSAID medications, prednisone (a steroid), and Tylenol, which is known to them to be ineffective regardless of the Plaintiff continually telling them this fact." ECF 1 at 7.

When Dr. Marthakis or Nurse Thews ask if the medications are working, Harris explains that he does not take them because he cannot tolerate them. They then prescribe another NSAID. When he reminds them that the medication had already been tried and was ineffective, they reassure him that their treatment plan should be followed and if he does not follow it, treatment will be discontinued. Therefore, Harris is forced to comply or risk being denied all treatment. It is unclear if Harris is taking the prednisone and Tylenol prescribed for his condition, neither of which are NSAIDs.

Harris keeps asking Dr. Marthakis to refer him to an off-site specialist. He wants an MRI so that disease progression can be tracked and Dr. Marthakis can implement a better treatment plan, but Dr. Marthakis either does not respond to these requests for health care or sends Harris

[7] Nurse Laughlin is not a defendant in this action.
[8] Harris has been unable to find a policy that states this.

to APN Thews. APN Thews merely repeats the treatment that Dr. Marthakis originally implemented.

On July 6, 2026, Harris submitted a health care request to get care for his back and neck pain. He was seen by Nurse Deanne Laughlin on July 24, 2026. Nurse Laughlin determined that this was an ongoing issue and she could not do anything to help. She referred Harris to be seen by the provider. She also offered Harris ibuprofen, but he explained that he could not take NSAIDs and why. She then went to talk to Dr. Marthakis who told her to give Harris a shot of Toradol and send him back to his cell. Harris again explained that Toradol is an NSAID. He was told to either accept the medication or sign a refusal form. He signed the refusal form.

On August 24, 2026, Harris saw APN Thews for a follow up visit. She again offered him Toradol, which he declined. She asked if he would try another type of medication for nerve pain. She indicated that Harris' psychiatrist, Dr. Cisse, would need to consent to the use of the medication because it can potentially interfere with mental health medications Harris is taking for schizophrenia and psychosis. APN Thews indicated she would email Dr. Cisse and ask for his consent, and she indicated she thought the medication would be beneficial.

On August 27, 2026, Harris sent Dr. Cisse a medical request asking for an emergency meeting. They met on September 15, 2026, and Harris asked if he received an email from APN Thews asking for permission to prescribe him a medication that could interfere with his mental health medications. Dr. Cicce indicated she did not receive an email from APN Thews or Dr. Marthakis. Harris was told to check back in with them because she was "confused as to what [he] was talking about." *Id.* at 10.

Harris saw Dr. Marthakis on October 23, 2026. Harris indicates he had submitted a request for health care more than a month earlier. She asked, "Why are you here?" He explained

he wanted an MRI and consultation with a neurosurgeon. She told him she did not have a health care request from him pertaining to that so he should submit another one and request to be seen. Harris asked how she was able to schedule the appointment if she did not have a request to be seen. She reiterated that he should submit another request if he wants to be seen.

The court will assume for purposes of this order that Harris' back pain constitutes a serious medical condition, even though he has offered few details regarding the nature and extent of his impairment. He describes only one direct interaction with Dr. Marthakis regarding his back pain. Dr. Marthakis would not see Harris and told him to submit a new health care request when he told her that he was there because he wanted an MRI and a consultation with a neurosurgeon. But Harris cannot dictate what medical care he receives and is not entitled to the best care possible. *Forbes*, 112 F.3d at 267. Here, Harris' treatment plan includes NSAIDs. Dr. Marthakis and Nurse Thews may have determined that these are appropriate despite the symptoms that Harris reported in the past. But his treatment was not limited to NSAIDs. He indicates that x-rays were performed. A week's worth of Flexeril was prescribed. Prednisone was prescribed, although it is unclear he is taking it. Tylenol was prescribed, although it is also unclear he is taking it. Based on the allegations in the complaint, it cannot be plausibly inferred that either Dr. Marthakis or APN Thews were deliberately indifferent to his medical needs related to his back pain.

Retaliation

In addition to Harris' claims that the defendants were deliberately indifferent to his medical needs, Harris alleges that, after he filed a grievance against Dr. Marthakis, he sought medical care relating to his testicular cyst and Dr. Marthakis ignored those requests in retaliation for filing the grievance. To state a First Amendment retaliation claim, an inmate must allege:

"(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707–08 (7th Cir. 2023) (citation omitted). Here, giving Harris the benefit of all favorable inferences, he has stated a retaliation claim against Dr. Marthakis.

For these reasons, the court:

(1) GRANTS Marques J. Harris leave to proceed against Nancy B. Marthakis, MD, in her individual capacity for compensatory and punitive damages for deliberate indifference to Harris' pain associated with a testicular cyst, in violation of the Eighth Amendment;

(2) GRANTS Marques J. Harris leave to proceed against Nancy B. Marthakis, MD, in her individual capacity for compensatory and punitive damages for retaliating against Harris after he filed a grievance following his January 2026 appointment by ignoring Harris' later requests for medical care, in violation of the First Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Diane Thews, APN;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Nancy B. Marthakis, MD, at Centurion Health of Indiana, LLC, with a copy of this order and the complaint (ECF 1);

(6) ORDERS Centurion Health of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Nancy B. Marthakis, MD, to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 16, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT